UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00320-JAW |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER AFFIRMING THE RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

After a bench trial in state court, on May 22, 2017, Christopher Wilson was convicted of Class A Aggravated Trafficking of cocaine base and Class C Possession of Heroin in violation of Maine law.  On July 24, 2017, Mr. Wilson was sentenced to ten years of imprisonment and a $400 fine for trafficking cocaine base, concurrent with four years of imprisonment and a $400 fine for possessing heroin.  Having exhausted his state court challenges to the conviction and sentence, in which the Maine Supreme Judicial Court vacated the heroin possession conviction as an incorrect application of state law, Mr. Wilson filed a habeas petition pursuant to 28 U.S.C. § 2254 and raised several challenges to the lawfulness of his conviction and detention.  The Magistrate Judge reviewed Mr. Wilson's habeas petition and recommended that the Court deny his petition and refrain from granting a certificate of appealability.

The Court carefully reviewed Mr. Wilson's objections and concludes, like the Magistrate Judge, that Mr. Wilson is not entitled to relief under 28 U.S.C. § 2254 and

that no certificate of appealability should issue. The Court's analysis incorporates and expands upon the Magistrate Judge's discussion.

## I.   PROCEDURAL HISTORY

### A.   Christopher Wilson's Conviction

#### 1.   The Indictment

On December 21, 2016, a grand jury sitting in Kennebec County, Maine indicted Christopher Wilson of two counts of Aggravated Trafficking in Scheduled Drugs, a Class A crime, in violation of 17-A M.R.S. § 1105-A(1)(B)(1).   *State v. Christopher Wilson*, Docket No. KENCD-CR-2016-02658, *Indictment* (Docket Record at 3).[1]   Count One alleged Mr. Wilson trafficked crack cocaine, while Count Two alleged he trafficked heroin.   *Id.*   On March 23, 2017, a grand jury handed down an amended indictment, which corrected information about Mr. Wilson's prior conviction for the Criminal Sale of a Controlled Substance in New York.   *State v. Wilson*, Docket No. KENCD-CR-2016-02658, *Am. Indictment* (Docket Record at 4).

#### 2.   The Suppression Hearing

On January 18, 2017, Mr. Wilson moved to "suppress any and all statements, tangible physical evidence, test results, and/or eyewitness identifications of [himself] . . .."   *State v. Wilson*, Docket No. KENCD-CR-2016-02658, *Mot. to Suppress* at 1 (Docket Record at 5).   On February 28, 2017, the state court held a suppression hearing on Mr. Wilson's motion.   *State v. Wilson*, Docket No. KENCD-CR-2016-02658, *Suppression Hr'g Tr.* (Docket Record at 6).   At the hearing, Mr. Wilson argued that

---

[1]      The state court records were filed with the Court in paper form.

law enforcement's initial stop and detention, which led to the discovery of narcotics, was unlawful. *Suppression Hr'g Tr.* at 3:16-25.

The State presented testimony from Detective Matt Estes, a narcotics detective with the Augusta Police Department. *Id.* at 5:1-6:12. Detective Estes testified that on October 22, 2016, he received information from Detective Provost of the Lewiston Police Department who had learned from a source of information that two men would be arriving in Augusta from Albany, New York later that day with crack cocaine and heroin. *Id.* at 6:18-7:12. Detective Provost further informed Detective Estes that one man was named Allan and was African American and the other man was Allan's "main man." *Id.* at 7:13-23. Detective Provost gave Detective Estes a picture of Allan but had neither a picture nor a description of Allan's "main man." *Id.* at 7:13-8:3. Detective Provost said the two men were scheduled to arrive at the Augusta, Maine bus terminal between 8:00 p.m. and 9:00 p.m. that day. *Id.* at 8:8-9:6.

Detective Estes learned a Greyhound bus from Albany was scheduled to arrive at the Augusta bus terminal around 8:20 p.m. *Id.* at 9:3-15. He drove to the bus station just after 8:00 p.m. and witnessed a Greyhound bus arrive around 8:30 p.m. *Id.* at 10:2-11. Only two passengers got off the bus. *Id.* at 10:17-24. Detective Estes recognized Allan from the information and photograph Detective Provost shared with him. *Id.* at 11:2-9. The two men got off the bus at the same time and began communicating with each other. *Id.* at 11:10-22. According to Detective Estes, it appeared the men were traveling together because Allan was talking about trying to find their ride. *Id.* at 11:17-25.

3

Detective Estes approached Allan and asked if he was Allan. *Id.* at 12:8-10. Allan acknowledged that was his name and reached out to shake Detective Estes' hand. *Id.* Allan mistakenly thought Detective Estes was his ride. *Id.* at 13:1-2. Detective Estes was the only law enforcement officer on the scene at this point, but a K9 unit responded and performed a dog sniff of Allan and the other man, who was identified as Christopher Wilson. *Id.* at 13:3-15. The K-9 alerted on both men and their luggage. *Id.* at 13:16-14:4. Detective Estes testified that law enforcement asked both men for permission to search their bags. *Id.* at 14:5-9. He further stated that the men consented to a search and law enforcement discovered a bag of crack cocaine and a bag of heroin inside a bag of rice in Mr. Wilson's luggage. *Id.* at 14:10-21. The bag contained approximately 10.74 grams of heroin and 6.85 grams of crack cocaine. *Id.* at 14:19-15:4.

On April 18, 2017, Justice William Stokes of the Kennebec County Superior Court denied Mr. Wilson's motion to suppress. *State v. Christopher Wilson*, Docket No. KENCD-CR-2016-02658, *Order on Mot. to Suppress* (Docket Record at 7). Justice Stokes noted Mr. Wilson did not challenge his consent to law enforcement's search of his luggage but rather the lawfulness of Detective Estes' decision to stop Mr. Wilson and Allan after they disembarked the Greyhound bus. *Id.* at 2 n.1, 3. Justice Stokes found Detective Estes had a reasonable and articulable basis under *Terry v. Ohio*, 392 U.S. 1 (1968) to stop Mr. Wilson and Allan. *Id.* at 3-4.

4

### 3.    Trial and Sentencing

On May 22, 2017, Mr. Wilson went to trial on the drug trafficking charges. *State v. Wilson*, Docket No. KENCD-CR-2016-02658, *Trial Proceedings* (Docket Record at 8) (*Trial Tr.*).  Maine District Judge Valerie Stanfill presided over the bench trial.  *Id.*  On direct examination, Detective Estes repeated his testimony concerning the investigation into Allan and his "main man."  *Id.* at 8:4-21:16.  Maine State Trooper Eric Verhille, who conducted the K-9 search with his four-legged partner, Clint, testified about the dog sniff and subsequent search of Mr. Wilson's luggage.  *Id.* at 28:22-36:15.  On cross-examination, Trooper Verhille stated his probable cause to search Mr. Wilson's luggage came from Clint alerting on Mr. Wilson and the luggage, not from Mr. Wilson's consent.  *Id.* at 38:22-39:22.  John Bangeman, a chemist at the Maine Health and Environmental Testing Laboratory, testified that the substances found inside Mr. Wilson's luggage were crack cocaine and heroin.  *Id.* at 42:24-84:9. Mr. Wilson did not testify.

After the close of evidence, Judge Stanfill noted that she did not find evidence of an actual sale or transaction on Count One or Count Two, and therefore whether Mr. Wilson was guilty of trafficking depended on the quantity of drugs found in his possession.  *Id.* at 123:16-20.  Judge Stanfill concluded the State had not proven beyond a reasonable doubt that Mr. Wilson possessed two grams or more of heroin and therefore he could not be convicted of Count Two of the indictment, although she did find Mr. Wilson possessed some unknown quantity of heroin.  *Id.* at 124:7-19. Judge Stanfill then asked counsel whether possession was a lesser-included offense

of trafficking, and Mr. Wilson's counsel stated "[t]here's no doubt" it is. *Id.* at 124:20-125:3. Judge Stanfill then found Mr. Wilson guilty as to Count Two for possession of heroin. *Id.* at 125:4-13. Returning to Count One, Judge Stanfill concluded Mr. Wilson possessed a sufficient amount of cocaine base to trigger the presumption of trafficking under Maine law. *Id.* at 125:14-127:10. She therefore convicted Mr. Wilson of Class A aggravated trafficking in cocaine base. *Id.*

On July 24, 2017, Mr. Wilson appeared before Judge Stanfill for sentencing. *State v. Wilson*, Docket No. KENCD-CR-2016-02658, *Sentencing Hr'g* (Docket Record at 9) (*Sentencing Tr.*).[2] During his allocution, Mr. Wilson asked how he could be convicted of a lesser included offense not listed in the indictment. *Id.* at 22:11-18. Judge Stanfill explained that, by law, the indictment automatically charges lesser included offenses. *Id.* at 19-22. Mr. Wilson also expressed confusion as to how Judge Stanfill convicted him of Class A Aggravated Drug Trafficking rather than Class B, and she explained that Mr. Wilson's prior drug convictions were aggravating factors, which increased the offense to Class A. *Id.* at 22:23-23:19. On July 24, 2017, Judge Stanfill sentenced Mr. Wilson to ten years of imprisonment and a $400 fine on Count One, concurrent with four years of imprisonment and a $400 fine on Count Two.[3] *Id.* at 32:22-24; *State v. Wilson*, Docket No. KENCD-CR-2016-02658, *J. and Commitment* (Docket Record at 10).

---

[2]    The state court record mistakenly lists the sentencing transcript as docket record number six.
[3]    Mr. Wilson petitioned for leave to appeal his sentence. *State v. Christopher Wilson*, Sentence Review Panel, No. SRP-17-351. On September 29, 2017, the Maine Sentence Review Panel denied leave to appeal. *State v. Christopher Wilson*, No. SRP-17-351, *Order Denying Leave to Appeal from Sentence* (Docket Record at 2).

6

### B.      Christopher Wilson's Direct Appeal

On August 21, 2017, Mr. Wilson filed a notice of appeal with the Maine Supreme Judicial Court, sitting as the Law Court. *State v. Wilson*, No. KEN-17-350, *Docket Record* (Docket Record at 1).  On July 31, 2018, the Law Court issued a memorandum of decision affirming Mr. Wilson's conviction.  *State v. Wilson*, No. KEN-17-350, *Mem. of Decision* (Docket Record at 3).  The Law Court first rejected Mr. Wilson's claim that there was no reasonable and articulable suspicion to justify the *Terry* stop.  *Id.* at 1.  It then found Judge Stanfill did not abuse her discretion by admitting documents not produced during discovery at trial as evidence of Mr. Wilson's prior drug offenses because the documents were substantially similar to documents Mr. Wilson received during discovery.  *Id.* at 1-2.  Third, the Law Court found no clear error in Judge Stanfill's finding there was sufficient chain of custody for the heroin and cocaine base found in Mr. Wilson's possession.  *Id.* at 2.  Finally, the Law Court found Judge Stanfill did not err in denying Mr. Wilson's motion for acquittal because the State produced sufficient evidence of cocaine base to give rise to the presumption of trafficking.  *Id.*

### C.      Post-Conviction Review in Maine State Court

Mr. Wilson petitioned for post-conviction review (PCR) in state court.  *Wilson v. State*, No. KENCD-CR-2018-01791, *Docket Record* (Docket Record at 1).  Through counsel, Mr. Wilson raised seven grounds for relief: (1) that his trial counsel failed to conduct an adequate pretrial investigation; (2) that his trial counsel failed to properly prepare for and conduct pretrial motion hearings; (3) that his trial counsel failed to

meaningfully engage in plea negotiations with the State; (4) that his trial counsel provided ineffective assistance during trial; (5) that his trial counsel was ineffective during the sentencing stage; (6) that his appellate counsel failed to provide effective assistance; and (7) all the grounds alleged in his initial pro se petition.  *State v. Wilson*, KENCD-CR-2018-01791, *Def,'s Am. Pet. for Post-Conviction Review* (Docket Record at 3).

On August 22, 2019, Judge Stanfill held an evidentiary hearing on Mr. Wilson's PCR petition.  *State v. Wilson*, KENCD-CR-2018-01791, *Am. Evidentiary Hr'g Tr.* (Docket Record at 4).  On January 17, 2020, Judge Stanfill issued an order denying Mr. Wilson's PCR petition.  *State v. Wilson*, KENCD-CR-2018-01791, *Order Denying Post-Conviction Relief* (Docket Record at 5).  Judge Stanfill first recounted the evidence presented at the hearing and noted the focus of the hearing was on the photo of Allan that Detective Estes claimed Detective Provost had shared with him and the identity of Detective Provost's source of information (SOI).  *Id.* at 2.  Mr. Wilson's trial counsel had not requested the photo or SOI's identity from the State and the State had never produced those items.  *Id.*  At the evidentiary hearing, Mr. Wilson's trial counsel conceded he could have and perhaps should have requested these items from the Government.  *Id.*

Nevertheless, Judge Stanfill found Mr. Wilson's trial counsel's refusal to request the photo and the SOI's identity was reasonable under *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.* at 2-3.  She concluded Mr. Wilson had no right to the SOI's identity, and therefore a failure to request the SOI's identity was not

ineffective assistance of counsel. *Id.* at 3. She also observed that the attorney's failure to request the photo was not ineffective assistance because "nothing about the photo was relevant to the issue of guilt or innocence, and thus would not impact the defense at trial." *Id.* Judge Stanfill also rejected Mr. Wilson's claim that his attorney did not apprise him of his right to testify at trial because no "persuasive evidence" supported his claim. *Id.* at 4. She also noted that Mr. Wilson testified at his PCR evidentiary hearing and admitted the drugs were in his bag. *Id.* Accordingly, Judge Stanfill stated "as the trial factfinder that this testimony would not have changed the outcome." *Id.*

Finally, Judge Stanfill addressed Mr. Wilson's claim that she erred in convicting him of the "lesser included crime of possession instead of trafficking." *Id.* at 5. She stated that this issue should have been raised on direct appeal and that the Law Court affirmed Mr. Wilson's sentence. *Id.* Accordingly, Judge Stanfill denied Mr. Wilson's PCR petition. *Id.*

On February 11, 2020, Mr. Wilson requested a certificate of probable cause to appeal the denial of his PCR petition to the Law Court. *Wilson v. State*, Maine Law Court, No. KEN-20-61, *Docket Record* (Docket Record at 1). On August 3, 2020, the Law Court summarily disposed of his request for a certificate of probable cause. *Wilson v. State*, Maine Law Court, No. KEN-20-61, *Order Denying Certificate of Probable Cause in Part and Summarily Vacating J. of Post-Conviction Ct. in Part* (Docket Record at 3). The Law Court summarily vacated Mr. Wilson's conviction for possession of heroin because the crime of possession is not a lesser-included offense

9

of the crime of aggravated trafficking.  *Id.*  However, it denied his other challenges.
*Id.*

### D.    Christopher Wilson's Petition Under 28 U.S.C. § 2254

On September 9, 2020, Mr. Wilson filed in this Court a petition for writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  *Pet. Under 28 U.S.C. § 2254 for Writ of
Habeas Corpus by a Person in State Custody* (ECF No. 1) (*Habeas Pet.*).  After the
Magistrate Judge ordered the state of Maine to answer Mr. Wilson's petition on
September 10, 2020, *see Order to Answer* (ECF No. 2), the State responded on
October 20, 2020 and moved to dismiss or deny Mr. Wilson's habeas petition.  *Resp't's
Mot. to Dismiss/Answer to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. §
2254* (ECF No. 6).  On December 7, 2020, Mr. Wilson replied.  *Pet'r's Resp. to Resp't's
Mot. to Dismiss Pet'r['s] Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (ECF
No. 9) (*Pet'r's Reply*).

On March 10, 2021, the Magistrate Judge submitted his report and
recommended decision.  *Recommended Decision on 28 U.S.C. § 2254 Pet.* (ECF No. 10)
(*Recommended Decision*).  After analyzing the arguments presented by Mr. Wilson
and the State, the Magistrate Judge recommended that the Court dismiss
Mr. Wilson's petition for habeas relief under 28 U.S.C. § 2254 and deny a certificate
of appealability pursuant to Rule 11 of the Rules Governing Section 2254 cases.  *Id.*
On March 23, 2021, Mr. Wilson objected.  *Objecting the Recommended Decision* (ECF
No. 11) (*Pet'r's Obj.*).

## II.    CHRISTOPHER WILSON'S OBJECTION

Mr. Wilson raises two objections to the Recommended Decision.  First, he contends his trial and appellate counsel deprived him of a meaningful opportunity to litigate his Fourth Amendment claim because they refused to accuse Maine law enforcement of perjury, failed to request the identity of a source of information, and failed to request a photograph of Allan, Mr. Wilson's traveling companion.  *Pet'r's Obj.* at 1-3.  Second, Mr. Wilson objects that the trial judge substantively acquitted him of aggravated drug trafficking under the first count of the indictment, impermissibly found him guilty of a lesser included offense not listed in the indictment, and then used his criminal history as an aggravating factor to convict him of aggravated drug trafficking, thereby violating his Fifth Amendment rights to be free from successive prosecutions for the same offense.  *Id.* at 3-5.  The State did not respond to Mr. Wilson's objections.

## III.    LEGAL STANDARD

As the Magistrate Judge's Recommended Decision is on an application for post-trial relief by an individual convicted of a criminal offense, this Court reviews objections to the Recommended Decision de novo.  28 U.S.C. § 636(b)(1)(B).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a state court has decided a habeas petitioner's claim on the merits, a federal court may only grant habeas relief when the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"

11

28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). This standard is deliberately "difficult to meet." *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). The "highly deferential" standard of review under § 2254(d) "demands that state-court decisions be given the benefit of the doubt." *See id.* (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The right to effective assistance of counsel the Supreme Court articulated in *Strickland v. Washington* is clearly established law for purposes of habeas relief under § 2254(d)(1). *Cullen*, 563 U.S. at 189 ("There is no dispute that the clearly established federal law here is *Strickland v. Washington*"). Criminal representation is ineffective when (1) "counsel failed to act reasonabl[y] considering all the circumstances" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 688, 694). There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). An attorney's representation must have caused "a breakdown in the adversarial process that renders the result unreliable" to rebut the presumption of reasonableness. *Strickland*, 466 U.S. at 687.

In the posture of a habeas petition under § 2254(d)(1), review under *Strickland* is "doubly deferential" because a court must perform *Strickland*'s "highly deferential"

review of a defense lawyer's performance and then apply "the deferential lens of § 2254(d)." *See Cullen¸* 563 U.S. at 190 (quoting *Strickland*, 466 U.S. at 689 and *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2, 123 (2009)). To prevail on any Sixth Amendment claim for ineffective assistance, Mr. Wilson must show the state court decision rejecting his *Strickland* claim was unreasonable such that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. *Harrington*, 562 U.S. at 102; *see also Jewett v. Brady*, 634 F.3d 67, 75 (1st Cir. 2011) (explaining that according to the Supreme Court, the "pivotal question" on collateral review is "whether the state court's application of the *Strickland* standard was unreasonable") (quoting *Harrington*, 562 U.S. at 101). As such, "[a] decision can still be reasonable even if the reviewing court thinks it is wrong . . .." *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007) (citing *Terry Williams v. Taylor*, 529 U.S. 362, 411 (2000)).

## IV.  DISCUSSION

The Court's review of a state court conviction under § 2254 is limited. AEDPA requires the Court to deny relief when the state court decision is reasonable and therefore the Court's task is to assess the reasonableness of the outcome in the state court system. The Court need not decide whether the state court was right. Here, as the Court concludes that the state court decisions were reasonable, Mr. Wilson is not entitled to relief under 28 U.S.C. § 2254.

In the posture of this habeas petition under 28 U.S.C. § 2254, the decision under review is the Law Court's order denying Mr. Wilson a certificate of probable

cause to appeal the denial of his PCR petition.  *Wilson v. State*, Maine Law Court, No. KEN-20-61, *Order Denying Certificate of Probable Cause in Part and Summarily Vacating J. of Post-Conviction Ct. in Part* (Docket Record at 3).  *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (explaining the last state-court adjudication on the merits was the petitioner's constitutional claim appealed to the state supreme court).  Because the Law Court denied review of the PCR petition in a summary disposition, the Court may also review the trial court's denial of Mr. Wilson's PCR petition.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning").

The Court concludes Mr. Wilson's objections to the Magistrate Judge's Recommended Decision lack merit.  First, to the extent Mr. Wilson raises a Fourth Amendment claim, he cannot pursue that claim on collateral review.  Second, to the extent Mr. Wilson raises a Sixth Amendment claim for ineffective assistance of counsel, that claim is both waived and non-meritorious.  Finally, Mr. Wilson's reliance on the Double Jeopardy Clause is procedurally defaulted and lacks merit because there is no Double Jeopardy issue in this case.

## A.    The Fourth Amendment Claim

The Magistrate Judge recommended that the Court reject Mr. Wilson's claim for relief under the Fourth Amendment.  *Recommended Decision* at 8-9.  Relying on *Stone v. Powell*, 428 U.S. 465 (1976) and *Sanna v. Dipaolo*, 265 F.3d 1 (1st Cir. 2001),

the Magistrate Judge explained that Fourth Amendment challenges on collateral review are generally barred when the petitioner "has 'been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule . . ..'" *Id.* (quoting *Stone*, 428 U.S. at 489).   The Magistrate Judge therefore rejected Mr. Wilson's Fourth Amendment claim because "the record establishes [he] had a full and fair opportunity to litigate his Fourth Amendment argument: he had a hearing and presented written argument in the Superior Court; he also presented written and oral argument to the Law Court on his appeal." *Id.* at 9.

Mr. Wilson urges this was error.  He argues that under *Strickland*, his trial and appellate counsel were constitutionally deficient by (1) failing to investigate possible perjury by the law enforcement officers who arrested and searched him; (2) failing to investigate and obtain the picture of Allan that Detective Provost shared with Detective Estes; and (3) failing to investigate the identity of the source of information. *Pet'r's Obj.* at 1-3.  He claims these failures to investigate deprived him of the opportunity to litigate his Fourth Amendment arguments for suppression of evidence.  *Id.*

The Court rejects Mr. Wilson's Fourth Amendment claim and affirms the Magistrate Judge's Recommended Decision in full for the reasons the Magistrate Judge articulated. *Recommended Decision* at 8-9.  Under *Stone v. Powell*, a federal court generally may not consider Fourth Amendment arguments brought by a prisoner held in state custody on collateral review.  *See Stone*, 428 U.S. at 494 ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"); *see also Sanna*, 265 F.3d at 8 ("*Stone* thus stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims"). Thus, the Magistrate Judge correctly rejected Mr. Wilson's Fourth Amendment claim because Mr. Wilson neither alleged nor could prove that the state of Maine's procedures for vindicating his Fourth Amendment rights were insufficient. *See Recommended Decision* at 8-9 (explaining Mr. Wilson litigated his Fourth Amendment claim in a suppression hearing and on appeal before the Law Court).

### B.  The Sixth Amendment Claims

Mr. Wilson's reference to *Strickland* may reveal the basis underlying his Fourth Amendment objection. It appears that in addition to raising a Fourth Amendment claim, Mr. Wilson may also be asserting a violation of his Sixth Amendment right to counsel for failure to adequately litigate his Fourth Amendment claim. Under *Kimmelman v. Morrison*, 477 U.S. 365 (1986), this is permissible. *See id.* at 375 (establishing a limited exception to the *Stone* rule and permitting habeas petitioners to seek suppression of evidence on the grounds that their counsel failed to pursue a meritorious Fourth Amendment claim when there is a reasonable probability that the outcome would have been different if the evidence had been excluded); *see also United States v. Mercedes-De La Cruz*, 787 F.3d 61, 67 (1st Cir. 2015) (explaining *Kimmelman*).

The Court rejects Mr. Wilson's ineffective assistance claim for two reasons. First, Mr. Wilson waived his claim of ineffective assistance by failing to develop it before the Magistrate Judge. Second, even assuming Mr. Wilson did not waive his ineffective assistance claim, 28 U.S.C. § 2254(d) does not permit the Court to grant relief.

### 1.    Mr. Wilson Waived His *Strickland* Claim.

Mr. Wilson waived his *Strickland* claim by failing to raise it before the Magistrate Judge. "Parties must take before the magistrate, not only their best shot but all of their shots." *Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (internal citations omitted). Mr. Wilson's habeas petition raised four grounds for relief: (1) "Judge Valerie Stanfill going against her own Rules of Court and [Statutes] of law;" (2) "Perjured testimony by DT Estes and Violation of [his] 4th Amendment against unreasonable searches;" (3) "D.T. Estes and Officer Provost said to 'SOI' gave them a picture of [his] co-defendant" which constituted "spoliation" and a denial of due process because he could not "challenge the authenticity of the photo;" and (4) "Violation of [his] Constitutional Rights 4th, 5th, 6th, 13th, 14th" arising from the denial of "due process and a right to a fair trial" by Judge Stanfill through her comments that the prosecution could engage in bootstrapping and her tolerance of perjury. *See Habeas Pet.*, Attach. 4, at 2; *id.*, Attach. 8, at 5-6; *id.*, Attach. 16, at 2.

The Sixth Amendment contains several rights. For purposes of analyzing waiver, it matters which Sixth Amendment rights Mr. Wilson asserted before the Magistrate Judge. "The Constitution guarantees a fair trial through the Due Process

Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment . . ..” *Strickland*, 466 U.S. at 684-85. The accused's right to the assistance of counsel is one of those enumerated rights, as is the right to an impartial trier of fact. *Id.* at 685 (quoting U.S. CONST., amend. VI). Mr. Wilson's habeas petition shows his Sixth Amendment claim is intertwined with his due process claim that Judge Stanfill was biased. *See Habeas Pet.*, Attach. 16, at 2. It was not, therefore, a Sixth Amendment claim under *Strickland* for ineffective assistance of counsel.

To be sure, in Mr. Wilson's habeas petition, he makes it clear that he is dissatisfied with his trial and appellate counsel. From the Court's review of his filings, Mr. Wilson criticized his lawyers' performances once in his habeas petition and once in his reply brief, but neither of these passages contains facts as opposed to his general expressions of disapproval.[4] More is needed to present a viable issue under *Strickland*. To state a claim under *Strickland*, Mr. Wilson needed to allege (1) his trial and appellate counsel's conduct was objectively unreasonable and (2) that but for his lawyers' “unprofessional errors, the result of the proceeding would have

---

[4]     Mr. Wilson writes in his habeas memorandum:

> All of these lawyer[]s are working with the State of Maine, that's why I could never get a fair trial in Maine. When you explain to your [lawyer] what happen to you and they tell you that they don't care what you say they are not going after no police. These lawyers are scared to expose this dishonest court system. They just go along with what the prosecutor.

*Habeas Pet.* at 8. In his reply memorandum, Mr. Wilson questioned:

> When you have a lawyer like Darrick Banda and Jeremy Pratt who would argue my Fourth Amendment claim?

*Pet'r's Reply* at 4.

been different." *See Chum v. Coyne-Fague*, 948 F.3d 438, 443-44 (1st Cir. 2020). Mr. Wilson's lack of specificity in his criticism of his lawyers before the Magistrate Judge fell short of stating a *Strickland* claim. Thus, to the extent Mr. Wilson now raises a *Strickland* claim as an objection to the Recommended Decision, that objection is waived. *Borden*, 836 F.2d at 6.

### 2. Even Assuming Mr. Wilson Has Not Waived His *Strickland* Claim, 28 U.S.C. § 2254 Does Not Permit the Court to Grant Relief.

Despite waiver, the Court has considered Mr. Wilson's objections and concludes *Strickland* does not entitle him to relief. As a reminder, Mr. Wilson claims his trial and appellate counsel were constitutionally deficient by (1) failing to request the SOI's identity; (2) failing to investigate and obtain the picture of Allan that Detective Provost shared with Detective Estes; and (3) failing to allege law enforcement officers provided perjured testimony. *Pet'r's Obj.* at 1-3. Mr. Wilson raised largely the same claims before Judge Stanfill in his PCR petition, and she rejected them. *State v. Wilson*, KENCD-CR-2018-01791, *Order Denying Post-Conviction Relief* (Docket Record at 5). The Court now considers whether Judge Stanfill's conclusions "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### a. The Source of Information's Identity

In the order denying Mr. Wilson's PCR petition, Judge Stanfill concluded Mr. Wilson's attorney had not fallen below a standard of objective reasonableness by

failing to request the SOI's identity. *State v. Wilson*, KENCD-CR-2018-01791, *Order Denying Post-Conviction Relief* at 3 (Docket Record at 5). She wrote that under Maine Rule of Evidence 509(c)(2), a "defendant does not have an automatic right to access an informant's identity but must seek a court order." *Id.* A court, however, will only order the informant's identity be disclosed when "the informant may be able to give testimony relevant to any issue in a civil or criminal case." *Id.* (citation omitted). Disclosure is not warranted unless the informant "may have knowledge relevant to the crime charged." *Id.* (citing *State v. Boutilier*, 2011 ME 17 ¶ 11). Judge Stanfill concluded Mr. Wilson's counsel's failure to request the SOI's identity was not objectively unreasonable because "[t]he SOI was not present at the time [of the offense] and would be unable to testify to anything relevant to the charges facing [Mr. Wilson]." *Id.* Therefore, disclosure would not have been required under the law and failure to request disclosure was not ineffective assistance. *Id.* Judge Stanfill did not address *Strickland*'s prejudice prong.

Applying the doubly deferential lens of § 2254(d) and *Strickland*, the Court concludes Judge Stanfill's decision was a reasonable application of *Strickland*. As Judge Stanfill stated, Mr. Wilson's counsel had no right to the SOI's identity under Maine law.[5] The SOI was not present at the scene of the crime, did not witness Mr.

---

[5]       This precept is neither new nor novel and is well established in both federal and Maine law. In 1957, the United States Supreme Court recognized "the informer's privilege." *See Roviaro v. United States*, 353 U.S. 53, 61-62 (1957). Sometimes referred to as the "tattler's privilege," *see United States v. Mills*, 710 F.3d 5, 13 (1st Cir. 2013), it holds that the "government has a qualified privilege to withhold the identity of people who provide law enforcement officers information about criminal acts." *United States v. Moon*, 802 F.3d 135, 151 (1st Cir. 2015). Here, Judge Stanfill rested on the requirement approved by the Supreme Court in *Roviaro* as well as by the Maine Supreme Judicial Court in *Boutilier* that before a confidential informant's identify may be revealed, the information must be "relevant and helpful to the defense." *Id.* (quoting *Roviaro*, 353 U.S. at 60); *Boutilier*, 2011

Wilson's arrest, and would not be able to testify to any of the facts surrounding Mr. Wilson's offense.   Judge Stanfill reasonably concluded Mr. Wilson's counsel's performance was not be objectively unreasonable for failing to pursue information he had no right to obtain.   Moreover, the record reflects that Mr. Wilson's attorney cross-examined Detective Estes about the SOI's credibility and attempted to tactically exploit the lack of evidence as to the SOI's identity to undermine the SOI's credibility. *See, e.g.*, *Suppression Hr'g Tr.* at 18:6-9 ("But because you don't know anything about this individual, we don't [know] whether the person has a credibility issue or conviction issue, or we really know nothing about this individual, do we?").  This sort of tactical choice is not ineffective assistance of counsel.   *Epsom v. Hall*, 330 F.3d 49, 54 (1st Cir. 2003) ("Trial lawyers make countless tactical choices and unless the net reckoning is 'patently unreasonable,' counsel's judgment is not constitutionally defective").

### b.   The Picture of Allan

The State Court also reasonably rejected Mr. Wilson's claim of ineffective assistance as it concerns his counsel's failure to request the picture of Allan that Detective Provost shared with Detective Estes.  *State v. Wilson*, KENCD-CR-2018-01791, *Order Denying Post-Conviction Relief* at 3 (Docket Record at 5).  As with the SOI's identity, the State Court noted "nothing about the photo was relevant to the issue of guilt or innocence, and thus would not impact the defense at trial."  *Id.*  The State Court further noted Detective Estes "had other information leading to the stop,

---

ME 17, ¶ 11 (To obtain disclosure of the identify of a confidential informant, a defendant must present evidence that the informant may have evidence "relevant to the crime charged").

and once he approached [Allan] he confirmed his name was [Allan] thus confirming the information that came from the SOI." *Id.* at 3-4. Thus, because Detective Estes had been "told the bus would arrive between 8 and 9 pm, and that the men were coming from Albany, New York" and "[a]ll of that happened just as the SOI related," the State Court found Mr. Wilson "has not proven that the failure to request the photo had an adverse effect on the proceeding." *Id.* at 4.

The Court concludes the State Court reasonably determined Mr. Wilson's attorney's failure to request the photograph of Allan did not prejudice him. Regardless of the picture of Allan, Detective Estes corroborated the SOI's information, which gave rise to a reasonable and articulable suspicion of ongoing criminal activity and was sufficient to commence a *Terry* stop. Detective Provost told Detective Estes he had a tip that an African American man named Allan was arriving from Albany, New York by bus with his "main man" between 8:00 p.m. and 9:00 p.m. on October 22, 2016. Detective Provost told Detective Estes the men would have drugs. After confirming that a bus was scheduled to arrive in Augusta from Albany around 8:20 p.m., Detective Estes went to the bus station and waited for the bus to arrive. He saw only two people get off the bus, both were African American men. Detective Estes observed them talking and went over to ask if one was Allan. That man said he was.

In light of the totality of the circumstances, the photograph would not make a difference. Even if obtained, the photograph would not undercut Detective Estes' reasonable articulable suspicion to initiate a *Terry* stop. As stated, Detective Estes

lawfully corroborated the SOI's information through an investigation.   Asking a suspect's name does not violate the Fourth Amendment. *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 185 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment").   Thus, the state court reasonably rejected Mr. Wilson's ineffective assistance claim concerning the photograph.

### c.   Failure to Investigate Alleged Perjury by Law Enforcement

Finally, Mr. Wilson contends his counsel were ineffective by failing to investigate potential perjury by law enforcement. *Pet'r's Obj.* at 1-3.   He claims his trial counsel refused to "go after" Maine police officers.   *Id.* at 3.   Specifically, Mr. Wilson urges that Detective Estes perjured himself because he testified Detective Provost told him Mr. Wilson and Allan would be carrying heroin and cocaine base and gave Detective Estes a picture of Allan.   *Id.*   Mr. Wilson contends this is perjury because Detective Provost's police report does not indicate he gave this information or a photograph to Detective Estes.   *Id.*   Mr. Wilson notes that the report only says Allan and his "main man" would be "carrying" and goes on to say Detective Estes later informed Detective Provost that he had apprehended two men matching the description.   *Id.*

As the Magistrate Judge noted, Mr. Wilson's claim of perjury is procedurally defaulted because he failed to raise it in state court proceedings.   *Recommended Decision* at 12 (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991), *partially abrogated on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012)).   Under the

doctrine of procedural default, the Supreme Court "has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Coleman*, 501 U.S. at 731. Under *Martinez v. Ryan*, 566 U.S. 1 (2012), there is a limited exception whereby a habeas petitioner may establish cause for a procedural default of a claim of ineffective assistance at trial if the petitioner can show ineffective assistance of counsel at the initial collateral review stage. *Id.* at 9, 16. However, ineffective assistance of counsel will not excuse procedural default of a claim if the procedural default occurs at a level of collateral review other than initial review. *Id.* at 16.

Here, Mr. Wilson has not addressed the issue of procedural default and no exception applies. This is a sufficient basis to reject Mr. Wilson's claim that his trial counsel was ineffective in failing to impeach Detective Estes about the alleged discrepancies between his testimony and Detective Provost's report. Nevertheless, Mr. Wilson's claim would fail even if the Court excused procedural default. An attorney's failure to pursue futile tactics is not ineffective assistance of counsel. *Knowles*, 556 U.S. at 127. Impeaching Detective Estes on immaterial portions of his testimony that were not obviously untrue would have been futile and it may well have been harmful to wage an unwarranted credibility attack on the Detective.

Mr. Wilson has not persuaded the Court that his lawyer's failure to impeach Detective Estes using Detective Provost's report was objectively unreasonable or resulted in prejudice to Mr. Wilson. For one, Detective Estes' testimony was not obviously untrue in light of Detective Provost's report. As Mr. Wilson notes, Detective

Provost's report does not say that he told Detective Estes that Mr. Wilson and Allan would be carrying heroin and cocaine. *Pet'r's Obj.*, Attach. 1, *Example 13*, at 1. Mr. Wilson is right; however, the report does state that Detective Provost told Detective Estes that the men would be "carrying" and that "carrying" is "common drug lingo informing that they are in possession of illegal drugs." *Id.* As such, Detective Estes' testimony is consistent either with Detective Provost telling Detective Estes something slightly different than what he put in the report or with Detective Provost telling Detective Estes that the men were "carrying" and Detective Estes understanding that meant the men were traveling with heroin and cocaine.

Mr. Wilson also puts undue weight on Detective Provost's failure to mention the photograph of Allan in his report. This omission is not proof that Detective Estes gave false testimony or that there was no photograph. Detective Provost might have forgotten that he sent the photograph to Detective Estes. Alternatively, he might have used the term "description" because a photograph is a visual, not verbal, description of a suspect. Thus, the Court does not find Mr. Wilson's counsel's failure to impeach Detective Estes regarding these differences was objectively unreasonable under *Strickland*.

Finally, Mr. Wilson failed to prove prejudice. Even assuming Detective Estes intentionally lied about having a photograph of Allan and about having been expressly told Mr. Wilson had heroin and crack cocaine, those issues are immaterial to Mr. Wilson's guilt or innocence. Law enforcement arrested Mr. Wilson after a lawful search in which he was found in possession of heroin and crack cocaine.

Whether an investigating officer actually possessed a photograph of his co-defendant or was told the specific drugs he was carrying does nothing to cast doubt upon the guilty verdict in this case or the merits of Mr. Wilson's motion to suppress.

The Court rejects Mr. Wilson's claim that his lawyer's failure to impeach one investigating officer with a different officer's police report about immaterial facts constituted ineffective assistance of counsel.  This impeachment would have likely been futile and potentially harmful, and the Court therefore denies relief under 28 U.S.C. § 2254.

### C.    The Double Jeopardy Claim[6]

Mr. Wilson's next claim is that his conviction on Count One of the Indictment for Class A Aggravated Trafficking of cocaine base was a successive prosecution for the same offense in violation of the so-called Double Jeopardy Clause of the United States Constitution.  *Pet'r's Obj.* at 3-5.  He claims that the evidence at trial did not show a sufficient quantity of cocaine base to convict him of Class A Aggravated Trafficking so his conviction of Class B unlawful trafficking as a lesser included offense, "came out of the indictment" and improperly used his criminal history to elevate that conviction to Class A Aggravated Trafficking.  *Id.* at 4-5.

---

[6]    The Court's review of the record suggests Mr. Wilson may have procedurally defaulted or waived his Double Jeopardy claim by failing to raise it before the state courts and the Magistrate Judge.  Nevertheless, the Court finds judicial efficiency counsels in favor of denying the claim on the merits rather than applying the doctrine of procedural default.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Ware v. Dickhaut*, 439 F. App'x 14, 14 (1st Cir. 2011) (per curiam) (unpublished) ("We bypass the question of whether the petitioner . . . exhausted his federal due process claim in the state courts, and we affirm the denial of his claim on the merits").

Mr. Wilson misreads the record. Count One of the indictment charged him with Class A Aggravated Trafficking of a Controlled Substance, specifically, cocaine base. *State v. Wilson*, Docket No. KENCD-CR-2016-02658, *Am. Indictment* (Docket Record at 4). The indictment charged Mr. Wilson's prior conviction for a drug offense in New York as an aggravating factor. *Id.* At trial, Judge Stanfill convicted Mr. Wilson of Count One, and expressly stated Mr. Wilson possessed the sufficient quantity of cocaine base to convict him of Class A Aggravated Trafficking. *Trial Tr.* at 125:14-127:10. Mr. Wilson's claim is meritless because he was convicted as charged and was not subject to successive prosecutions for the same offense.

To the extent Mr. Wilson is trying to challenge his conviction on Count Two for possession of heroin, he is not entitled to relief. As the Magistrate Judge explained, Judge Stanfill convicted Mr. Wilson on Count Two of the indictment after mistakenly concluding possession of a controlled substance was a lesser-included offense of trafficking of a controlled substance under Maine law. *Recommended Decision* at 11 n.5. The Law Court vacated this conviction because under Maine law, the crime of possession is not a lesser-included offense of the crime of aggravated trafficking. *Id.* Therefore, Mr. Wilson is not entitled to relief on Count Two because the State Court already vacated his conviction. *Id.* The Magistrate Judge correctly held there was no lesser-included offense issue as to Count One because Judge Stanfill found Mr. Wilson guilty as charged. *Id.*

## V.      CONCLUSION

Having reviewed and considered the United States Magistrate Judge's Recommended Decision, as well as Mr. Wilson's objections, the Court concurs with the recommendations of the Magistrate Judge for the reasons set forth in his Recommended Decision and in this Order.   The Court determines no further proceedings are necessary and denies Mr. Wilson's petition under 28 U.S.C. § 2254. Because the state adjudication did not result in a decision that was contrary to, or involved an unreasonable application of federal law, and because the state proceedings did not result in a decision that was based on an unreasonable determination of the facts, the Court concludes that Mr. Wilson is not entitled to relief.

1.      It is therefore <u>ORDERED</u> that the Recommended Decision (ECF No. 10) be and hereby is <u>AFFIRMED</u>.

2.      Accordingly, it is hereby <u>ORDERED</u> that Christopher Wilson's Petition Under 28 U.S.C. § 2254 (ECF No. 1) be and hereby is <u>DENIED</u>.

3.      It is further <u>ORDERED</u> that no certificate of appealability should issue in the event that Christopher Wilson files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of May, 2021.